**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| In re: Maria Magdalena Herrera Debtor(s). | Case No. 6:25-bk-01980-LVV Chapter 13 Case |
| --- | --- |

**THE BANK OF NEW YORK MELLON, F/K/A THE BANK OF NEW YORK AS TRUSTEE FOR REGISTERED HOLDERS OF CWABS, INC., ASSET-BACKED CERTIFICATES, SERIES 2006-23'S**
**MOTION FOR RELIEF FROM THE AUTOMATIC STAY**

**NOTICE OF OPPORTUNITY TO OBJECT AND FOR HEARING**

If you object to the relief requested in this paper, you must file a response with the Clerk of Court at George C. Young Federal Courthouse, 400 W. Washington Street, Suite 5100, Orlando, FL 32801 within 21 days from the date of the attached proof of service, plus an additional three days if this paper was served on any party by U.S. Mail.

If you file and serve a response within the time permitted, the Court will either notify you of a hearing date or the Court will consider the response and grant or deny the relief requested in this paper without a hearing. If you do not file a response within the time permitted, the Court will consider that you do not oppose the relief requested in the paper, and the Court may grant or deny the relief requested without further notice or hearing.

You should read these papers carefully and discuss them with your attorney if you have one. If the paper is an objection to your claim in this bankruptcy case, your claim may be reduced, modified, or eliminated if you do not timely file and serve a response.

**COMES NOW**, The Bank of New York Mellon, F/K/A The Bank of New York as trustee for registered Holders of CWABS, Inc., Asset-Backed Certificates, Series 2006-23, its Successors and/or Assigns ("Secured Creditor"), by and through its undersigned counsel, as and for its Motion for Relief from the Automatic Stay, and states as follows:

1. The Court has jurisdiction over this matter pursuant to 11 U.S.C. § 362, FRBP 4001(a) and the various other applicable provisions of the United States Bankruptcy Code, Federal Rules of Bankruptcy Procedure and the laws of the United States of America.

2. The Debtor(s) filed a voluntary petition pursuant to Chapter 13 of the Bankruptcy Code on April 7, 2025.

3. Secured Creditor holds a security interest in the Debtor(s)' real property located at 1310 AGUACATE COURT, ORLANDO, FL 32837, by virtue of a Mortgage which is recorded in the Public Records of ORANGE County, Florida in Book 08932, at Page 2257. Said Mortgage secures a Note in the amount of $369,750.00. Final Judgment of Mortgage Foreclosure was entered on April 30, 2024 in the amount of $1,104,572.17. Copies of the relevant loan documents are attached hereto as Composite **Exhibit "A"**.

4. The aforementioned Mortgage gives Secured Creditor a first mortgage position on property legally described as:

    **LOT 13 OF SOUTHCHASE PHASE 1A PARCEL 12 IN THE CITY OF ORLANDO, COUNTY OF ORANGE, STATE OF FLORIDA, ACCORDING TO THE MAP THEREOF IN PLAT BOOK 45 PAGE 56 THROUGH 58, INCLUSIVE, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY**

    **Commonly Known as: 1310 AGUACATE COURT, ORLANDO, FL 32837**

5. The Debtor(s) is/are indebted to Secured Creditor in the amount of $386,119.37 principal balance, with interest accruing at the rate of 9.38     per cent, plus other fees and costs advanced by the mortgagee pursuant to the loan documents. See **Exhibit "B"** attached hereto.

6. Secured Creditor filed a timely Proof of Claim (Claim No. 8-1) with arrears in the amount of $874,677.34 and a regular monthly payment in the amount of $6,170.05.

7. Debtor's Chapter 13 Plan (Doc. No. 20) proposes to pay Secured Creditor arrears in the amount of $0.00 through the Plan and pay $1,600.00/per month direct to Secured Creditor.

8. Payments pursuant to the aforementioned Mortgage have been in default, and remain in default, since February 1, 2008. The Post-Petition default date is May 1, 2025.

9. Thus, the Debtor(s) has/have failed to adequately protect the interest of Secured Creditor.

10. Secured Creditor's security interest in the subject property is being significantly jeopardized by the Debtor(s)' failure to make regular payments under the subject loan documents while Secured Creditor is prohibited from pursuing lawful remedies to protect such security interest.

11. Therefore, Secured Creditor maintains that cause exists pursuant to 11 U.S.C. § 362(d)(1) for the automatic stay to be lifted.

12. Secured Creditor further requests that the Court Order entered pursuant to the instant Motion provide that all communications sent by the Secured Creditor in connection with proceeding against the property including, but not limited to, notices required by state law and communications to offer and provide information with regard to a potential Forbearance Agreement, Loan Modification, Refinance Agreement, Loss Mitigation Agreement or other Loan Workout, may be sent directly to the Debtor.

13. Carrington Mortgage Services, LLC services the loan on the Property referenced in this Motion. In the event the automatic stay in this case is modified, this case dismisses, and/or the Debtor obtains a discharge and a foreclosure action is commenced on the mortgaged property, the foreclosure will be conducted in the name of Secured Creditor. Secured Creditor, directly or through an agent, has possession of the promissory note. Secured

Creditor will enforce the promissory note as transferee in possession. Secured Creditor is the original mortgagee or beneficiary or the assignee of the Mortgage.

14. Per the terms of the subject Note and Mortgage, Secured Creditor is entitled to recover its reasonable attorney's fees and costs related to the prosecution of this Motion, and would request this Court award Secured Creditor its reasonable attorney's fees, and $199.00 in costs for the filing of this Motion.

15. Pursuant to 11 U.S.C. § 362(e), Secured Creditor hereby requests that in the event a hearing is necessary, that said hearing be held within thirty (30) days.

16. Secured Creditor respectfully requests that the Court waive the fourteen (14) day stay of the Order Granting Relief pursuant to Bankruptcy Rule 4001(a)(3), so that Secured Creditor can pursue its in rem remedies without further delay.

.

*<Space Intentionally Left Blank>*

**WHEREFORE**, Secured Creditor respectfully requests that the automatic stay be lifted so that Secured Creditor may be permitted to pursue *in rem* remedies outside of the bankruptcy forum, that in the event that a hearing is necessary on this Motion that said hearing be held within thirty (30) days, and for such other further relief as the Court may deem just and proper.

Respectfully submitted:

/s/ Anthony Vamvas, Esq.
Anthony Vamvas, Esq.
Florida Bar No. 42742
Lender Legal PLLC
Attorney for Secured Creditor
1800 Pembrook Drive, Suite 250
Orlando, FL 32810
Phone: (407) 730-4644
avamvas@lenderlegal.com

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing Motion for Relief from the Automatic Stay was either sent electronically or by U.S. mail, first-class postage pre-paid, to:

Maria Magdalena Herrera
1310 Aguacate Ct
Orlando, FL 32837-6342
(U.S. MAIL)

Trustee
Laurie K Weatherford
Post Office Box 3450
Winter Park, FL 32790
(ECF)

U.S. Trustee
United States Trustee - ORL7/13, 7
Office of the United States Trustee
George C Young Federal Building
400 West Washington Street, Suite 1100
Orlando, FL 32801
(ECF)

on July 23, 2025.

Respectfully submitted:

/s/ Anthony Vamvas
Anthony Vamvas, Esq.
Florida Bar No. 42742
Lender Legal PLLC
Attorney for Secured Creditor
1800 Pembrook Drive, Suite 250
Orlando, FL 32810
Phone: (407) 730-4644
Fax: (888) 337-3815
avamvas@lenderlegal.com

# EXHIBIT "A"

2/15/2022 2:58 PM FILED IN OFFICE OF TIFFANY M RUSSELL CLERK OF THE CIRCUIT COURT ORANGE CO FL

SEE "PREPAYMENT PENALTY ADDENDUM TO NOTE" ATTACHED HERETO AND MADE A PART HEREOF. [redacted]

[redacted]

# ADJUSTABLE RATE NOTE

LOAN NO.: [redacted]

(LIBOR Six-Month Index (As Published In *The Wall Street Journal*) - Rate Caps)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

| SEPTEMBER 30, 2006 | SIMI VALLEY | CALIFORNIA |
|---|---|---|
| [Date] | [City] | [State] |

1310 AGUACATE COURT, ORLANDO, FL 32837
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 369,750.00 (this amount is called "Principal"), plus interest, to the order of Lender. Lender is
STEARNS LENDING, INC., A CALIFORNIA CORPORATION

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 8.700 %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the first day of each month beginning on NOVEMBER, 2006 .
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on OCTOBER 01, 2036 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at STEARNS LENDING, INC.
4 HUTTON CENTRE DRIVE, SUITE 500, SANTA ANA, CA 92707
or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $ 2,895.63 . This amount may change.

### (C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

MULTISTATE ADJUSTABLE RATE NOTE - LIBOR SIX-MONTH INDEX (AS PUBLISHED IN *THE WALL STREET JOURNAL*) -
Single Family - Fannie Mae UNIFORM INSTRUMENT
Amended for Florida

Initials: N H CH.

Form 3520 1/01

VMP-838N(FL) (0005) Page 1 of 4 LENDER SUPPORT SYSTEMS INC. 838NFL.NEW (02/03)

[redacted]

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The interest rate I will pay may change on the first day of OCTOBER, 2008 , and on that day every 6th month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal.* The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding EIGHT AND 700/1000THS percentage points ( 8.700 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 10.200 % or less than 8.700 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than ONE AND ONE HALF percentage point(s) ( 1.500 %) from the rate of interest I have been paying for the preceding 6 months. My interest rate will never be greater than 15.700 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

**6. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

Initials: H. H C.H

**7. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

## 12. DOCUMENTARY TAX

The state documentary tax due on this Note has been paid on the mortgage securing this indebtedness.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

[signature] (Seal) MARIA M. HERRERA -Borrower

[signature] (Seal) CESAR R. HERRERA -Borrower

[signature] (Seal) -Borrower

(Seal) -Borrower

(Seal) -Borrower

(Seal) -Borrower

(Seal) -Borrower

(Seal) -Borrower

*[Sign Original Only]*

Pay to the order of:
Countrywide Home Loans, Inc.
Without Recourse
Countrywide Bank, N.A.
By: [signature]
Laurie Meder, SVP

Pay to the order of:
__________
Without Recourse
Countrywide Home Loans, Inc.
By: [signature]
Michele Sjolander, SVP

Without recourse pay to the order of    Countrywide Bank, N.A.

Stearns Lending, Inc.
A California Corporation

JUDY SMART
ASSISTANT SECRETARY

DATE: SEPTEMBER 30, 2006
BORROWER: MARIA M. HERRERA AND CESAR R. HERRERA

LOAN #: [redacted]
PROPERTY ADDRESS: 1310 AGUACATE COURT, ORLANDO, FL 32837

# PREPAYMENT PENALTY ADDENDUM

THIS PREPAYMENT PENALTY ADDENDUM is dated SEPTEMBER 30, 2006, and is incorporated into and amends and supplements the Note of the same date (the "Note") given by STEARNS LENDING, INC.

(the "Lender"). The Note is secured by a Mortgage or Deed of Trust or comparable security instrument (the "Security Instrument") covering the property (the "Property") identified in the Security Instrument.

The section of the Note entitled "Borrower's Right to Prepay" is replaced with the following new section:

BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A prepayment of all of the unpaid Principal is known as a "Full Prepayment." A prepayment of only part of the unpaid Principal is known as a "Partial Prepayment." When I make a Partial or Full Prepayment, I will tell the Note Holder in writing that I am doing so.

Subject to the Prepayment Penalty specified below, I may make a Full Prepayment or Partial Prepayments of my obligation. The Note Holder will use all of my prepayments to reduce the amount of Principal that I owe under the Note. If I make a Partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment.

**If within the first TWENTY FOUR ( 24 ) months after the execution of this Note, I make prepayment(s), the total of which exceeds twenty (20) percent of the original Principal amount of this Note, I agree to pay a Prepayment Penalty in an amount equal to the payment of six (6) months' advance interest on the amount by which the total of my prepayment(s) during the twelve (12) month period immediately preceding the date of the prepayment exceeds twenty (20) percent of the original Principal amount of this Note. Interest will be calculated using the rate in effect at the time of prepayment. I will pay this Prepayment Penalty regardless of whether I sell the Property or refinance the loan with the same Lender or Note Holder.**

All other terms and conditions of the above referenced Note remain in full force and effect.

M Herrera 09-30-06
MARIA M. HERRERA Borrower Date

Cesar R. Herrera 09-30-06
CESAR R. HERRERA Borrower Date

Borrower Date

Borrower Date

RECORDING REQUESTED BY:
**Countrywide Home Loans Servicing LP**
**Attn. WORKOUT DEPARTMENT, LAN-70**
**177 COUNTRYWIDE WAY**
**LANCASTER, CA 93536'**

Loan #: [redacted]

-----------------------------------*FOR INTERNAL USE ONLY*-----------------------------------

# LOAN MODIFICATION AGREEMENT

## (Adjustable Interest Rate)

This Loan Modification Agreement ("Agreement"), made this 10th day of December 2007, between MARIA M HERRERA, CESAR R HERRERA and Countrywide Home Loans Servicing LP (Lender), amends and supplements (1) the Mortgage, Deed of Trust, or Deed to Secure Debt (the Security Instrument), dated the 30th day of September 2006 and in the amount of $369,750.00 and (2) the Note bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as in the 'Property', located at 1310 AGUACATE COURT, ORLANDO, FL 32837.

The real property described being set forth as follows:

**SAME AS IN SAID SECURITY INSTRUMENT**

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (not withstanding anything to the contrary contained in the Note or Security Instrument):

1. As of the 1st day of February 2008, the amount payable under the Note or Security Instrument (the "Unpaid Principal Balance") is U.S. $386,119.37 consisting of the amount(s) loaned to the borrower by Lender and any interest capitalized to date.

2. The Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of the Lender. Interest will be charged on the Unpaid Principal Balance from the 1st day of January 2008. The Borrower promises to make monthly payments of principal and interest of U.S. $3,051.83 beginning on the 1st day of February 2008. The interest rate and monthly payment will adjust in accordance with the Note, Adjustable Rate Rider and any other loan document that is affixed to or incorporated into the Note and Rider and provides for, implements or relates to any change or adjustment in the interest rate and monthly payment amount under the Note. If on the 1st day of October 2036 (the "Maturity Date"), the Borrower still owes amounts under the Note and Security Instrument, as amended by this Agreement, the Borrower will pay these amounts in full on the Maturity Date.

3. The Borrower will make such payments at 450 American Street, Simi Valley, California 93065 or at such other place as the Lender may require.

4. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in the Borrower is sold or transferred and the Borrower is not a natural person) without the Lender's prior consent, the Lender may, at it's option, require immediate payment in full of all sums secured by this Security Instrument.

   If the Lender exercises this option, the Lender shall give the Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which the Borrower must pay all sums secured by this Security Instrument. If the Borrower fails to pay these sums prior to the expiration of this period, the Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on the Borrower.

5. The Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, the Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that the Borrower is obligated to make under the Security Instrument.

[redacted]

6. Nothing in this agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument. Except as otherwise specifically provided in this Agreement, the Note and Security Instrument will remain unchanged, and the Borrower and Lender will be bound by, and comply with, all terms and provisions thereof, as amended by this Agreement.

7: In consideration of this Modification, Borrower agrees that if any document related to the Security Instrument, Note and/or Modification is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the loan, or is otherwise missing upon the request of the Lender, Borrower(s) will comply with Lender's request to execute acknowledge, initial and deliver to Lender any documentation Lender deems necessary to replace or correct the lost misplaced, misstated, inaccurate or otherwise missing document(s). If the original promissory note is replaced the Lender hereby indemnifies the Borrower(s) against any loss associated with a demand on the original note. All documents Lender requests of borrower(s) shall be referred to as Documents. Borrower agrees to deliver the Documents within ten (10) days after receipt by Borrower(s) of a written request for such replacement.

As evidenced by their signatures below, the Borrower and the Lender agree to the foregoing.

M Herrera ______________________ 12-19-07
**MARIA M HERRERA** Dated

Cesar R Herrera ______________________ 12-19-07
**CESAR R HERRERA** Dated

STATE OF Florida

COUNTY OF Orange

On 12/19/07 before me, CLARA I. Osorio

Notary Public, personally appeared Maria M. & Cesar R. Herrera

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person (s) whose name (s) is/are subscribed to the within instrument and acknowledged me that he/she/they executed the same in his/her/their authorized capacity (ies), and that by his/her/their signatues (s) on the instrument the person (s), or entity upon behalf of which the person (s) acted, executed the instrument.

Clara I Osorio
My Commission DD305828
Expires March 31, 2008

WITNESS my hand and official seal.

Signature Clara I. Osorio

******************************************************************************

**Countrywide Home Loans Servicing LP**

By: Eric Fleisher Dated 3/6/08

Case 6:25-bk-01980-LVV Doc 39 Filed 07/

Return To:

STEARNS LENDING, INC.

4 HUTTON CENTRE DRIVE, SUITE 500
SANTA ANA, CA 92707

This document was prepared by:

STEARNS LENDING, INC.
4 HUTTON CENTRE DRIVE, SUITE 500
SANTA ANA, CA 92707

INSTR 20060701868
OR BK 08932 PG 2257 PGS=24
MARTHA O. HAYNIE, COMPTROLLER
ORANGE COUNTY, FL
10/24/2006 12:05:38 PM
MTG DOC TAX 1,294.30
INTANG TAX 739.50
REC FEE 205.50

PLEASE RETURN TO REC. DEPT.
Lender's First Choice
3850 Royal Avenue
Simi Valley, CA 93063

[Space Above This Line For Recording Data]

# MORTGAGE

LOAN NO.:
ESCROW NO

MIN
MERS Phone: 1-888-679-6377

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated SEPTEMBER 30, 2006, together with all Riders to this document.

(B) "Borrower" is
MARIA M. HERRERA AND CESAR R. HERRERA, WIFE AND HUSBAND

Borrower is the mortgagor under this Security Instrument.

(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone of P.O. Box 2026, Flint, MI 48501-2026, tel.

(D) "Lender" is
STEARNS LENDING, INC., A CALIFORNIA CORPORATION

Initials: M.H. C.H.

FLORIDA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS Form 3010 1/01
VMP-6A(FL) (0005) Page 1 of 16 LENDER SUPPORT SYSTEMS, INC. MERS6AFL.NEW (05/04)

Lender is a CORPORATION
organized and existing under the laws of CALIFORNIA .
Lender's address is
4 HUTTON CENTRE DRIVE, SUITE 500, SANTA ANA, CA 92707 .
(E) "Note" means the promissory note signed by Borrower and dated SEPTEMBER 30, 2006 .
The Note states that Borrower owes Lender
THREE HUNDRED SIXTY NINE THOUSAND SEVEN HUNDRED FIFTY AND NO/100 X X X X X X X X X X X Dollars
(U.S. $ 369,750.00 ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than OCTOBER 01, 2036 .
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

[XX] Adjustable Rate Rider [ ] Condominium Rider [ ] 1-4 Family Rider
[ ] Graduated Payment Rider [XX] Planned Unit Development Rider [ ] Biweekly Payment Rider
[ ] Balloon Rider [ ] Rate Improvement Rider [ ] Second Home Rider
[ ] Other(s) [specify]

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments, and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(L) "Escrow Items" means those items that are described in Section 3.
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.
(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

Initials: [signature]

(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument:

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in the COUNTY [Type of Recording Jurisdiction] of ORANGE [Name of Recording Jurisdiction]:

LOT 13 OF SOUTHCHASE PHASE 1A PARCEL 12 IN THE CITY OF ORLANDO, COUNTY OF ORANGE, STATE OF FLORIDA, ACCORDING TO MAP THEREOF IN PLAT BOOK 45, PAGES 56 THROUGH 58, INCLUSIVE, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

Parcel ID Number: [redacted] which currently has the address of 1310 AGUACATE COURT [Street] ORLANDO [City], Florida 32837 [Zip Code] ("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

Initials: [handwritten initials]

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment

can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest

Initials: YL H.O.H.

shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

Initials: YL H.C.H.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of

Initials: M. H.C.H.

any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers

Initials: H.H, O.H.

unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the

Initials: YL H.C.H.

purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Initials: H. H.C.H.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Attorneys' Fees.** As used in this Security Instrument and the Note, "attorneys' fees" shall include any attorneys' fees awarded by an appellate court and any attorneys' fees incurred in a bankruptcy proceeding.

**25. Jury Trial Waiver.** The Borrower hereby waives any right to a trial by jury in any action, proceeding, claim, or counterclaim, whether in contract or tort, at law or in equity, arising out of or in any way related to this Security Instrument or the Note.

Initials: M. H.C.H.

**BY SIGNING BELOW**, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.
Signed, sealed and delivered in the presence of:

______________________ -Witness

______________________ -Witness

______________________(Seal)
MARIA M. HERRERA -Borrower

______________________(Seal)
CESAR R. HERRERA -Borrower

______________________(Seal)
-Borrower

______________________(Seal)
-Borrower

______________________(Seal)
-Borrower

______________________(Seal)
-Borrower

______________________(Seal)
-Borrower

______________________(Seal)
-Borrower

(Property Address)
1310 AGUACATE COURT
ORLANDO, FL 32837

(Mailing Address)
1310 AGUACATE COURT
ORLANDO, FL 32837

STATE OF FLORIDA , County ss:

The foregoing instrument was acknowledged before me this by MARIA M. HERRERA AND CESAR R. HERRERA .

who is personally known to me or who has produced as identification.

Notary Public

## ACKNOWLEDGMENT

STATE OF Florida

COUNTY OF Orange

On 9/30/06 (DATE) before me, Tony Ramasami (NAME OF NOTARY PUBLIC), a Notary Public, Personally Appeared

MARIA M HERRERA AND CESAR R. HERRERA

NAME(S) OF SIGNERS

____ personally known to me -or- ✓ proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

TONY RAMASAMI
Comm# DD0491601
Expires 8/14/2009
Bonded thru (800)432-4254
Florida Notary Assn., Inc

NOTARY SEAL

WITNESS my hand and official seal.

Tony Ramasami

SIGNATURE OF NOTARY

MY COMMISSION EXPIRES ON: 8/14/09

**Description of Attached Document:**

Title to Type of Document: ____

Document Date: ____ Number of Pages: ____

Signers Other Than Named Above: ____

# ADJUSTABLE RATE RIDER

**(LIBOR Six-Month Index (As Published In *The Wall Street Journal*) - Rate Caps)**

LOAN NO.: [redacted] MIN: MERS [redacted]

THIS ADJUSTABLE RATE RIDER is made this 30th day of SEPTEMBER, 2006 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to STEARNS LENDING, INC., A CALIFORNIA CORPORATION

("Lender") of the same date and covering the property described in the Security Instrument and located at:

1310 AGUACATE COURT, ORLANDO, FL 32837
[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

The Note provides for an initial interest rate of 8.700 %. The Note provides for changes in the interest rate and the monthly payments, as follows:

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The interest rate I will pay may change on the first day of OCTOBER, 2008 , and on that day every 6th month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in The Wall Street Journal. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

Initials: H.H. C.H.

Form 3138 1/01

MULTISTATE ADJUSTABLE RATE RIDER - LIBOR SIX-MONTH INDEX (AS PUBLISHED IN THE WALL STREET JOURNAL) - Single Family - Fannie Mae Uniform Instrument

VMP-838R (0402) Page 1 of 4 LENDER SUPPORT SYSTEMS INC. 838R.NEW (07/04)

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding EIGHT AND 700/1000THS percentage points ( 8.700 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 10.200 % or less than 8.700 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than ONE AND ONE HALF percentage points ( 1.500 %) from the rate of interest I have been paying for the preceding 6 months. My interest rate will never be greater than 15.700 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Uniform Covenant 18 of the Security Instrument is amended to read as follows:

> **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

Initials: [handwritten initials]

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

| | |
|---|---|
| _______________(Seal) MARIA M. HERRERA -Borrower | _______________(Seal) CESAR R. HERRERA -Borrower |
| _______________(Seal) -Borrower | _______________(Seal) -Borrower |
| _______________(Seal) -Borrower | _______________(Seal) -Borrower |
| _______________(Seal) -Borrower | _______________(Seal) -Borrower |

# PLANNED UNIT DEVELOPMENT RIDER

LOAN NO.: [redacted]

MIN: [redacted]
MERS Pho[redacted]

THIS PLANNED UNIT DEVELOPMENT RIDER is made this 30th day of SEPTEMBER, 2006 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note to STEARNS LENDING, INC., A CALIFORNIA CORPORATION

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

1310 AGUACATE COURT, ORLANDO, FL 32837
[Property Address]

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such parcels and certain common areas and facilities, as described in

COVENANTS, CONDITIONS AND RESTRICTIONS.
(the "Declaration"). The Property is a part of a planned unit development known as

SOUTHCHASE
[Name of Planned Unit Development]

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses, benefits and proceeds of Borrower's interest.

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. PUD Obligations.** Borrower shall perform all of Borrower's obligations under the PUD's Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

Initials: Y. H. C. H.

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become

Initials: H. H. C.H.

additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this PUD Rider.

_____(Seal) MARIA M. HERRERA -Borrower

_____(Seal) CESAR R. HERRERA -Borrower

_____(Seal) -Borrower

_____(Seal) -Borrower

_____(Seal) -Borrower

_____(Seal) -Borrower

_____(Seal) -Borrower

_____(Seal) -Borrower

DOC # 20120202550 B: 10363 P: 2943
04/18/2012 09:36 AM Page 1 of 1
Rec Fee: $10.00
Deed Doc Tax: $0.00
Mortgage Doc Tax: $0.00
Intangible Tax: $0.00
Martha O. Haynie, Comptroller
Orange County, FL
Ret To: SIMPLIFILE LC

Recording Requested By:
**Bank of America**
Prepared By: **Diana De Avila**

When recorded mail to:
**CoreLogic**
**450 E. Boundary St.**
**Attn: Release Dept.**
**Chapin, SC 29036**

Property Address:
**1310 AGUACATE COURT**
**ORLANDO, FL 32837**
FLO-AM 16803967 4/11/2012

This space for Recorder's use

MIN #: MERS Phone #: 888-679-6377

# ASSIGNMENT OF MORTGAGE

For Value Received, the undersigned holder of a Mortgage (herein "Assignor") whose address is **1901 E Voorhees Street, Suite C, Danville, IL 61834** does hereby grant, sell, assign, transfer and convey unto **THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK,AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF THE CWABS, INC., ASSET-BACKED CERTIFICATES, SERIES 2006-23** whose address is **101 BARCLAY ST - 4W, NEW YORK ,NY 10286** all beneficial interest under that certain Mortgage described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Mortgage.

| | |
|---|---|
| Original Lender: | **STEARNS LENDING, INC., A CALIFORNIA CORPORATION** |
| Original Borrower(s): | **MARIA M. HERRERA AND CESAR R. HERRERA, WIFE AND HUSBAND** |
| Date of Mortgage: | **9/30/2006** |
| Original Loan Amount: | **$369,750.00** |

Recorded in **Orange County, FL** on: **10/24/2006**, book **OR 08932**, page **2257** and instrument number **20060701868**

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Mortgage to be executed on 4/16/12

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.**

By: ______________________
Diana Pham
Assistant Secretary

By: ______________________
Pabla Zuniga
Assistant Secretary

Witness: Marivel Castro

Witness: Ralph Flores

State of **California**
County of **Ventura**

On 4/16/12 before me, ANITA J. CALDERON, Notary Public, personally appeared Diana Pham and Pabla Zuniga, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person (s) acted, executed the instrument.

**I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.**

WITNESS my hand and official seal.

Notary Public: Anita J. Calderon
My Commission Expires: 5/05/2015

ANITA J. CALDERON
Commission # 1931780
Notary Public - California
Ventura County
My Comm. Expires May 5, 2015

**(Seal)**

**IN THE CIRCUIT COURT OF THE NINTH JUDICIAL CIRCUIT IN AND FOR ORANGE COUNTY, FLORIDA**

**Case No: 2021-CA-000100-O**

**THE BANK OF NEW YORK MELLON F/K/A THE BANK OF NEW YORK AS TRUSTEE FOR REGISTERED HOLDERS OF CWABS, INC., ASSET-BACKED CERTIFICATES, SERIES 2006-23,**
**Plaintiff,**

**vs.**
**MARIA M. HERRERA; UNKNOWN HEIRS, DEVISEES, GRANTEES, ASSIGNEES, LIENORS, CREDITORS, TRUSTEES, OR OTHER CLAIMANTS BY, THROUGH, UNDER OR AGAINST CESAR R. HERRERA, DECEASED; SILVANA J. HUAYAMARES; UNKNOWN SPOUSE OF SILVANA J. HUAYAMARES; RICARDO A. HUAYAMARES; UNKNOWN SPOUSE OF RICARDO A. HUAYAMARES N/K/A MARJORY A HUAYAMARES; SOUTHCHASE PHASE 1A PARCELS 12,14 AND 15 HOMEOWNERS ASSOCIATION, INC.; SOUTHCHASE-WEST PROPERTY OWNERS ASSOCIATION, INC.; NATIONSTAR MORTGAGE LLC F/K/A CENTEX HOME EQUITY COMPANY, LLC F/K/A CENTEX HOME EQUITY CORPORATION; GLEN STAFFORD LEWIS; UNKNOWN TENANT IN POSSESSION N/K/A MATTHEW GAMBARDELLO,**
**Defendants.**
_____________________________________________/

**FINAL JUDGMENT OF FORECLOSURE**

**THIS MATTER** was heard before the Court at Trial on April 15, 2023. After consideration of all evidence presented and the state of the record, this Court rules as follows:

**IT IS ADJUDGED** that:

1. Final Judgment in favor of the Plaintiff, THE BANK OF NEW YORK MELLON F/K/A THE BANK OF NEW YORK AS TRUSTEE FOR REGISTERED HOLDERS OF CWABS, INC., ASSET-BACKED CERTIFICATES, SERIES 2006-23, is **GRANTED** as to all counts and against the following Defendants: MARIA M. HERRERA; UNKNOWN HEIRS, DEVISEES, GRANTEES, ASSIGNEES, LIENORS, CREDITORS, TRUSTEES, OR OTHER CLAIMANTS BY, THROUGH, UNDER OR AGAINST CESAR R. HERRERA, DECEASED; SILVANA J. HUAYAMARES; UNKNOWN SPOUSE OF SILVANA J. HUAYAMARES; RICARDO A. HUAYAMARES; UNKNOWN SPOUSE OF RICARDO A. HUAYAMARES N/K/A MARJORY A HUAYAMARES; SOUTHCHASE PHASE 1A PARCELS 12,14 AND 15 HOMEOWNERS ASSOCIATION, INC.; SOUTHCHASE-WEST PROPERTY OWNERS ASSOCIATION, INC.; NATIONSTAR MORTGAGE LLC F/K/A CENTEX HOME EQUITY COMPANY, LLC F/K/A CENTEX HOME EQUITY CORPORATION; GLEN STAFFORD LEWIS; UNKNOWN TENANT IN POSSESSION N/K/A MATTHEW GAMBARDELLO.

2. **Amounts Due.** The following amounts are due and owed to the Plaintiff:

| | | |
|---|---|---|
| **Principal Balance Due** | | **$ 386,119.37** |
| **Interest** on the Note and Mortgage from 1/1/2008 to 4/15/2024<br>Per Diem of $152.068 | | **$ 622,574.82** |
| **Escrow Balance** | | **$ 92,070.98** |
| **Property Inspections** | | **$ 2,002.00** |
| **Title** | | **$ 1,050.00** |
| **Appraisal** | | **$ 755.00** |
| **TOTAL DUE** | | **$1,104,572.17** |

3. The total sum referenced in Paragraph 2 shall bear interest at the statutory rate from this date forward.

4. **Lien on Property.** Plaintiff, whose address is: 1600 South Douglass Road, Suite 200-A, Anaheim, California 92806 holds a lien for the total sum specified in Paragraph 2 herein. The lien of the Plaintiff is superior in dignity to any right, title, interest or claim of the following Defendants: **MARIA M. HERRERA; UNKNOWN HEIRS, DEVISEES, GRANTEES, ASSIGNEES, LIENORS, CREDITORS, TRUSTEES, OR OTHER CLAIMANTS BY, THROUGH, UNDER OR AGAINST CESAR R. HERRERA, DECEASED; SILVANA J. HUAYAMARES; UNKNOWN SPOUSE OF SILVANA J. HUAYAMARES; RICARDO A. HUAYAMARES; UNKNOWN SPOUSE OF RICARDO A. HUAYAMARES N/K/A MARJORY A HUAYAMARES; SOUTHCHASE PHASE 1A PARCELS 12,14 AND 15 HOMEOWNERS ASSOCIATION, INC.; SOUTHCHASE-WEST PROPERTY OWNERS ASSOCIATION, INC.; NATIONSTAR MORTGAGE LLC F/K/A CENTEX HOME EQUITY COMPANY, LLC F/K/A CENTEX HOME EQUITY CORPORATION; GLEN STAFFORD LEWIS; UNKNOWN TENANT IN POSSESSION N/K/A MATTHEW GAMBARDELLO** and all persons, corporations, or other entities claiming by, through or under the Defendants or any of them, and the property will be sold free and clear of all claims of the Defendants, with the exception of any assessments that are superior pursuant to Sections 718.116

or 720.3085, Florida Statutes or the Declaration of Covenants, whichever provides the most protection for the Plaintiff from liability for past due assessment. Additionally, all liens and/or property transfers recorded after the recording of the *lis pendens* in this action are hereby foreclosed of their interest pursuant Fla. Stat. § 48.23.   If the United States of America is a Defendant in this action, then pursuant to 28 U.S.C. § 2410(c), it shall have a period of 120 days from the date of sale to redeem the subject property.  All municipal liens recorded after the mortgage, which do not have an independent statutory basis for super-priority are hereby foreclosed pursuant to *City of Palm Bay v. Wells Fargo Bank*, N.A., 114 So.3d 924 (Fla. 2013), but the holders of any such liens may retain a right of redemption as provided by Fla. Stat. § 45.0315. The lien of the Plaintiff encumbers the subject property located in ORANGE County, Florida, and described as:

**LOT 13 OF SOUTHCHASE PHASE 1A PARCEL 12 IN THE CITY OF ORLANDO, COUNTY OF ORANGE, STATE OF FLORIDA, ACCORDING TO THE MAP THEREOF IN PLAT BOOK 45 PAGE 56 THROUGH 58, INCLUSIVE, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY**

Property Address: **1310 AGUACATE COURT, ORLANDO, FL 32837**

5.      If the total sum with interest at the rate described in paragraph 3 and all costs accrued subsequent to this judgment are not paid, the Clerk of Circuit Court shall sell the subject property at public sale on June 4, 2024 to the highest bidder for cash, except as prescribed in Paragraph 6, via an online sale at **www.myorangeclerk.realforeclose.com**, beginning at 11 a.m. on the prescribed date after having first given notice as required by section 45.031, Florida Statutes. Plaintiff must arrange for publication of notice of sale in accordance with chapters 45 and 702, Florida Statutes.  The Plaintiff must file the original Notice of Sale and Affidavit of Proof of Publication with the Clerk no later than 24 hours prior to the sale. Plaintiff or Plaintiff's attorney may also cancel or reschedule the sale by filing a motion with the Court in accordance with Florida Rules of Civil Procedure, Form 1.996(b) and may seek to reschedule the sale to a later date.

6.      **Costs.** Plaintiff shall advance all subsequent required costs of this action.  Except for the fee to the Clerk as provided in §45.035, Florida Statutes, and publishing costs supported by an affidavit, reimbursement or credit for such costs shall be by court order based upon a written motion and adjudication at a hearing with notice.  If a third party bidder is the purchaser, the third party bidder must pay the documentary stamps attached to the certificate of title in addition to the bid.

7.      **Plaintiff's Additional Expenses**. If the Plaintiff incurs additional expenses subsequent to the entry of this final judgment but prior to the sale date specified in paragraph 5, Plaintiff may, by written motion served on all parties and adjudication at a hearing with notice, seek to amend this final judgment to include said additional expenses.

8.      **Distribution of Proceeds.** On the filing of the Certificate of Title, the Clerk shall distribute the proceeds of the sale, so far as they are sufficient, by paying:  first, all of the Plaintiff's costs; second, documentary stamps affixed to the Certificate, unless the property is purchased by a third party bidder; third, Plaintiff's attorneys' fees; fourth, the total sum due to the Plaintiff, less

the items paid, plus interest at the rate prescribed in paragraph 4 from this date to the date of the sale; and by retaining any remaining amount pending further Order of this Court.

9.    **Right of Redemption/Right of Possession**. On filing of the Certificate of Sale, Defendant(s) and all persons claiming under or against Defendant(s) since the filing of the Notice of Lis Pendens shall be foreclosed of all estate or claim in the property except as to claims or rights under chapter 718 or chapter 720, Florida Statutes, if any. On filing of the Certificate of Sale, Defendant(s)' right of redemption as provided by section 45.0315, Florida Statutes shall be terminated. On filing of the Certificate of Title, the person named on the Certificate of Title shall be let into possession of the property.

10.    **Attorneys' Fees.** The Court reserves jurisdiction to consider attorney's fees. If fees are sought, a timely motion under Rule 1.525 may be filed.

11.    IMPORTANT INFORMATION PROVIDED pursuant to section 45.031, Florida Statutes:

IF THIS PROPERTY IS SOLD AT PUBLIC AUCTION, THERE MAY BE ADDITIONAL MONEY FROM THE SALE AFTER PAYMENT OF PERSONS WHO ARE ENTITLED TO BE PAID FROM THE SALE PROCEEDS PURSUANT TO THIS FINAL JUDGMENT.

IF YOU ARE A SUBORDINATE LIENHOLDER CLAIMING A RIGHT TO FUNDS REMAINING AFTER THE SALE, IF ANY, YOU MUST FILE A CLAIM WITH THE CLERK NO LATER THAN THE DATE THAT THE CLERK REPORTS THE FUNDS AS UNCLAIMED. IF YOU FAIL TO FILE A TIMELY CLAIM, YOU WILL NOT BE ENTITLED TO ANY REMAINING FUNDS.

If the property has qualified for the homestead tax exemption in the most recent approved tax roll, also include the following two paragraphs:

IF YOU ARE THE PROPERTY OWNER, YOU MAY CLAIM THESE FUNDS YOURSELF.  YOU ARE NOT REQUIRED TO HAVE A LAWYER OR ANY OTHER REPRESENTATION AND YOU DO NOT HAVE TO ASSIGN YOUR RIGHTS TO ANYONE ELSE IN ORDER FOR YOU TO CLAIM ANY MONEY TO WHICH YOU ARE ENTITLED. PLEASE CHECK WITH THE ORANGE COUNTY CLERK OF CIRCUIT COURT AT 425 NORTH ORANGE AVENUE, ORLANDO, FL 32801, (407) 836-2000 TEN (10) DAYS AFTER THE SALE TO SEE IF THERE IS ADDITIONAL MONEY FROM THE FORECLOSURE SALE THAT THE CLERK HAS IN THE REGISTRY OF THE COURT.

IF YOU DECIDE TO SELL YOUR HOME OR HIRE SOMEONE TO HELP YOU CLAIM THE ADDITIONAL MONEY, YOU SHOULD READ VERY CAREFULLY ALL PAPERS YOU ARE REQUIRED TO SIGN, ASK SOMEONE ELSE, PREFERABLY AN ATTORNEY WHO IS NOT RELATED TO THE PERSON OFFERING TO HELP YOU, TO MAKE SURE THAT YOU UNDERSTAND WHAT YOU ARE SIGNING AND THAT YOU ARE NOT TRANSFERRING YOUR PROPERTY OR THE EQUITY IN YOUR PROPERTY WITHOUT THE PROPER INFORMATION.

IF YOU CANNOT AFFORD TO PAY AN ATTORNEY, YOU MAY CONTACT A LEGAL SERVICES OFFICE, SUCH AS: COMMUNITY LEGAL SERVICES OF MID-FLORIDA, INC. AT (800) 405-1417 TO SEE IF YOU QUALIFY FINANCIALLY FOR THEIR SERVICES. IF THEY CANNOT ASSIST YOU, THEY MAY BE ABLE TO REFER YOU TO A LOCAL BAR REFERRAL AGENCY OR SUGGEST ANOTHER OPTION. IF YOU CHOOSE TO CONTACT ONE OF THESE SERVICES FOR ASSISTANCE, YOU SHOULD DO SO AS SOON AS POSSIBLE AFTER RECEIPT OF THIS NOTICE.

12.     Only the judgment owner will be allowed to credit bid. An assignment of the final judgment of foreclosure filed with the Clerk of the Circuit Court prior to the public sale will effectively transfer with it the right to credit bid at the sale. Court approval of the assignment of the final judgment is not required.

13.     Upon issuance of the Certificate of Title, the Clerk is authorized to issue a writ of possession without further action of the Court.

14.     **Jurisdiction Retained.** The Court retains jurisdiction of this action to enter further orders that are proper, including without limitation: any action to reforeclose any junior liens or interests that have been omitted from this Final Judgment of Foreclosure, any actions for collection or execution of any deficiency judgments against any borrowers, orders authorizing writs of possession, an award of attorney's fees, and to enter a deficiency judgment if the Defendant has not been discharged in bankruptcy.

**DONE AND ORDERED** in Orange County, Florida on April 30, 2024.

eSigned by Eric J Netcher  04/30/2024 16:09:07 xK2m0Fvy

Eric J. Netcher
Circuit Judge

The Court certifies that this Judgment was electronically filed and served on all parties receiving electronic service via the Florida Court's e-Filing Portal. Plaintiff's counsel must serve the Judgment on all parties not receiving electronic service.

Bradford Petrino, Esq.
Florida Bar No. 41883
Lender Legal PLLC
1800 Pembrook Drive, Suite 250
Orlando, FL 32810
Attorney for Plaintiff

Maria M. Herrera
c/o Myers, Eichelberger & Russo, P.L.
5750 Major Blvd., Suite 250
Orlando, FL 32819
Adam@theMElawfirm.com
Service@theMElawfirm.com

Unknown Heirs, Devisees, Grantees, Assignees, Lienors, Creditors, Trustees, or Other Claimants by, through, under or against, Cesar R. Herrera, Deceased
c/o Julia P. Kite-Powell, Esq.
P.O. Box 18645
Tampa, FL 33679
juliakp@tampabay.rr.com

Silvana J. Huayamares
c/o Myers, Eichelberger & Russo, P.L.
5750 Major Blvd., Suite 250
Orlando, FL 32819
Adam@theMElawfirm.com
Service@theMElawfirm.com

Unknown Spouse of Silvana J. Huayamares
14304 Rainsong Dr.
Orlando, FL 32824

Ricardo A. Huayamares
c/o Legal Counsel, P.A.
13330 W. Colonial Dr., # 110
Winter Garden, FL 34787
efilings@legalcounselpa.com
richard@legalcounselpa.com
michele@legalcounselpa.com

Unknown Spouse of Ricardo A. Huayamares n/k/a Marjory A. Huayamares
c/o Legal Counsel, P.A.

13330 W. Colonial Dr., # 110
Winter Garden, FL 34787
efilings@legalcounselpa.com
richard@legalcounselpa.com
michele@legalcounselpa.com

Southchase Phase 1A Parcels 12, 14 and 15 Homeowners Association, Inc.
760 Central Florida Parkway, #200
Longwood, FL 32750

Southchase-West Property Owners Association, Inc.
1631 E. Vine St., Suite 300
Kissimmee, FL 34744

Nationstar Mortgage LLC f/k/a Centex Home Equity Company, LLC f/k/a Centex Home Equity
Corporation
1201 Hays Street
Tallahassee, FL 32301

Glen Stafford Lewis
14304 Rainsong Dr.
Orlando, FL 32824

Unknown Tenant in Possession n/k/a Matthew Gambardello
1310 Aguacate Court
Orlando, FL 32837

# EXHIBIT “B”

# CARRINGTON MORTGAGE SERVICES MFR/NOD REFERRAL SHEET

| Property Address | 1310 AGUACATE CT<br>ORLANDO FL 32837 |
|---|---|

| Vesting | THE BANK OF NEW YORK MELLON, F/K/A, THE BANK OF NEW YORK AS TRUSTEE FOR REGISTERED, HOLDERS OF CWABS, INC., ASSET-BACKED CERTIFICATES,, SERIES 2006-23 |
|---|---|

| Mortgager Information | |
|---|---|
| *Account #* | |
| *FHA Case #* | |
| *Mortgager* | **MARIA M HERRERA** |
| *Co-Mortgager* | **CESAR R HERRERA** |
| *Date Last Payment Received* | **1/1/2008** |
| *Last Payment Amount* | |
| *Current UPB* | **$386,119.37** |
| *Motion Type* | **Delinquent Payments** |

| Loan Type | CONV |
|---|---|

| MFR Totals | | |
|---|---|---|
| *Total Payments Due* | **$** | **18,510.15** |
| *Uncollected Interest Due* | **$** | **-** |
| *Total Fees Due* | **$** | **-** |
| *Total Cost Due* | $ | - |
| *Total Late Charges Due* | $ | - |
| *Post Suspense Balance* | | $0.00 |
| *Total Due for MFR* | $ | 18,510.15 |

| | |
|---|---|
| *Contractual Due Date* | 2/1/2008 |
| *Post-Petition Due Date* | 5/1/2025 |

| BK Information | |
|---|---|
| *BK Case #* | 25-01980 |
| *BK Chapter* | **13** |
| *BK Filing State* | **FL** |
| *Debtor* | **MARIA MAGDALENA HERRERA** |
| *Co-Debtor* | **$0.00** |

**Payment Due Detail**

| From | To | P&I | Escrow | Total Payment Amount | # of Missed Payments | Total |
|---|---|---|---|---|---|---|
| 5/1/2025 | 7/1/2025 | $4,015.28 | $2,154.77 | $6,170.05 | 3 | $18,510.15 |
| | | | | | **Total** | $18,510.15 |

| Delinquent Taxes | | Corporate Advance Detail | | |
|---|---|---|---|---|
| **Year** | **Amount** | **Expense Description** | **Fee Amount** | **Cost Amount** |
| | | *BPO* | | |
| | | *BK Fees & Costs* | | |
| | | *Property Inspections* | | |
| | | *NSF Fees* | | |
| | | *Corporate Advance* | | |
| | | *Expense Advance* | | |
| | | *Escrow Shortage* | | |
| **Total** | $ - | **Total** | $ - | $ - |